**Matthew J. ADAMITIS, Appellant**

v.

**ERIE INSURANCE EXCHANGE, Appellee.**

Superior Court of Pennsylvania.

Argued June 5, 2012.

Filed Sept. 25, 2012.

Scott B. Cooper, Harrisburg, for appellant.

Suzanne Tighe, Wilkes–Barre, for appellee.

BEFORE: STEVENS, P.J., LAZARUS, J., and COLVILLE, J.*

OPINION BY STEVENS, P.J.

This appeal comes from the judgment entered in the Court of Common Pleas of Philadelphia County, which denied Plaintiff/Appellant Matthew J. Adamitis' motion for declaratory judgment and instead entered judgment in favor of Defendant/Appellee Erie Insurance Exchange on Appellant's claim for underinsured motorist coverage benefits for injuries sustained while driving at work. We affirm.

The trial court has provided an apt recitation of fact and procedural history to the case as follows:

### PROCEDURAL HISTORY

When Matthew J. Adamitis was denied his claim for underinsured motorist coverage ("UIM") by Erie Insurance Exchange ("Erie"), he filed [a] Complaint for Declaratory Judgment, 42 Pa.C.S.A. § 7531 *et seq.*, to determine his rights under his motor vehicle insurance policy. Specifically he seeks an Order from the Court which concludes that he is entitled to underinsured motorist coverage for his October, 2005 accident.

When Erie Filed its Answer to the Complaint with New Matter, the Defendant–Insurance Company denied that Plaintiff–Adamitis is entitled to UIM coverage under the circumstances presented here. Further, Erie seeks an Order from the Court declaring that the plaintiff is not entitled to recover underinsured motor[ist] benefits from the Erie policy.

The parties agreed to proceed in a nonjury trial. Counsel provided compre-

---

* Retired Senior Judge assigned to the Superior Court.

hensive pre-trial and trial submissions—legal research, stipulation of facts, trial memoranda, and numerous exhibits—for consideration by [the trial court].

On October 16, 2009, [the trial court] presided at the non-jury trial. After careful consideration of the evidence presented and the law, the [court entered a Judgment Order] in favor of Erie Insurance Exchange and against Matthew J. Adamitis.

## FACTUAL BACKGROUND

Many of the facts are not in dispute. On October 7, 2005, Mr. Matthew Adamitis was working as a bus driver for the Berks Area Reading Transit Authority ("BARTA"). While working in the course and scope of his employment, Mr. Adamitis was involved in a serious motor vehicle accident with an underinsured motorist.

The plaintiff [Adamitis] has been a customer of Erie since 2001, with policies for automobile, homeowners, and liability coverage. Plaintiff–Adamatis paid premiums to Defendant–Erie Insurance Exchange for a Pioneer Family Auto Policy to cover his personal vehicles. After resolving his claims against the underinsured motorist who caused the October, 2005 accident, Mr. Adamitis sought UIM coverage from Erie. The plaintiff testified that when his UIM claim was rejected by Erie, that was the first time he knew or became aware of the regular use exclusion clause.

The parties stipulated that although the exclusion clause was part of the UM/UIM policy which Mr. Adamitis had at the time of the October 5, 2005 motor vehicle accident, his original (2001) Pioneer automobile policy did not include a regular use exclusion clause. Mr. Adamitis testified that he does not recall ever receiving Erie's Notice, dated April 10, 2004, which provides in pertinent part:

"Under LIMITATIONS ON OUR DUTY TO PAY:

● exclusion 10 has been added. Because of this exclusion, Uninsured/Underinsured Motorists Coverage is not provided for bodily injury to you or a resident arising from the use of a 'non-owned motor vehicle or a non-owned miscellaneous vehicle which is regularly used by you or a resident, but not insured for Uninsured or Underinsured Motorists Coverage under this policy.'"

He stated that when his annual renewal paperwork arrives for all of his Erie policies, he reads all of the materials and compares the bills. He believes that he never received the April, 2004 Notice. Ms. Theresa Huzinec, Erie's Supervisor of Automobile Product Development, explained the manner in which the documents are mailed to Erie customers. It is an automated, computer-driven process. She testified that Mr. Adamitis did receive the April, 2004 Notice with his renewal billing. This Court concludes that Plaintiff–Adamitis did receive the form entitled, "Changes that Affect Your Uninsured/Underinsured Motorist Coverage—Pennsylvania Notice UF–4179 (Ed. 4/04).

The parties stipulated that in October, 2005, the BARTA bus did not carry underinsured motorist coverage As a self-insured entity, BARTA was not required to carry UIM coverage. Mr Adamitis had no role in the purchase of BARTA insurance and no control over whether or not BARTA maintained UIM coverage. It was also stipulated that in October, 2005, although Erie did not have available for purchase any automobile policy in Pennsylvania which did not

include the regular use exclusion clause, there were other Pennsylvania insurers who did offer personal automobile policies which did not have the exclusion clause.

Trial Court Opinion in Support of Judgment Order, dated 11/24/09.

On appeal, Mr. Adamitis ("Appellant") raises the following issues for our review:

I. WHETHER THE TRIAL COURT SHOULD BE REVERSED BECAUSE THE "REGULAR USE" EXCLUSION RESTRICTS AND CONFLICTS WITH THE MANDATE OF THE PENNSYLVANIA MOTOR VEHICLE FINANCIAL RESPONSIBILITY LAW IN SECTION 1731 WHICH REQUIRES UNDERINSURED MOTORIST COVERAGE BE PROVIDED FOR AN INSURED WHO DOES NOT REJECT UNDERINSURED MOTORIST [COVERAGE] AND IS NOT SUBJECT TO A LIMITATION ON RECOVERY UNDER § 1731(d)?

II. WHETHER THE TRIAL COURT SHOULD BE REVERSED BECAUSE THE UNILATERALLY ADDED "REGULAR USE" EXCLUSION IS AMBIGUOUS WHEN THERE IS ALREADY ANOTHER PORTION OF THE POLICY WHICH ALREADY DEFINES REGULAR USE AS 45 CONSECUTIVE DAYS?

III. WHETHER THE TRIAL COURT SHOULD BE REVERSED WHEN THE INSURED IS NOT PROPERLY NOTIFIED AND EXPLAINED ABOUT THE UNILATERAL ADDITION OF THE "REGULAR USE" EXCLUSION AND THUS, HIS REASONABLE EXPECTATIONS WERE NOT MET UNDER THE TOTALITY OF CIRCUMSTANCES[?]

IV. WHETHER THE TRIAL COURT SHOULD BE REVERSED BECAUSE THE "REGULAR USE" EXCLUSION, AS APPLIED IN THIS CASE, IS AGAINST PUBLIC POLICY WHEN: (1) THE INSURED IS IN AN ACCIDENT IN THE COURSE AND SCOPE OF EMPLOYMENT, (2) THE INSURANCE COMPANY KNOWS ABOUT THE INSURED'S REGULAR USED VEHICLE, (3) THE INSURANCE COMPANY ADMITS THE INSURED HAS NO CONTROL OVER THE PURCHASE OF UNDERINSURED MOTORIST COVERAGE ON THE 'REGULARLY USED VEHICLE NOR AN ABILITY TO NEGOTIATE UNDERINSURED MOTORIST COVERAGE ON THAT VEHICLE, (4) THE INSURED HAD NO OPTION BUT TO ACCEPT THE UNILATERALLY ADDED EXCLUSION AND (5) THE INSURED FOR UNDERINSURED MOTORIST COVERAGE [SIC]?

Brief for Appellant at 8.

In Issues I and IV, Appellant asks whether the regular-use exclusion both violates Section 1731 of the MVFRL and is void against public policy. As these issues are purely legal, our scope of review is plenary and our standard of review is *de novo*. *Generette v. Donegal Mut. Ins. Co.*, 598 Pa. 505, 957 A.2d 1180, 1189 (2008). It is well-settled that

[i]n construing a policy of insurance, we are required to give plain meaning to a clear and unambiguous contract provision unless such provision violates a clearly expressed public policy. *Bur-*

stein [*v. Prudential Property & Cas. Ins. Co.*], 570 Pa. 177, 809 A.2d [204], 206 (2002) (citing *Eichelman v. Nationwide Ins. Co.*, 551 Pa. 558, 711 A.2d 1006, 1008 (1998)); *Prudential Prop. and Cas. Ins. Co. v. Colbert*, 572 Pa. 82, 813 A.2d 747, 750 (2002) (same). Here, Appellant concedes that the policy language is unambiguous, thereby challenging the exclusion solely on the grounds of public policy. We consistently have been reluctant to invalidate a contractual provision due to public policy concerns. In *Eichelman*, we stated:

> Generally, a clear and unambiguous contract provision must be given its plain meaning unless to do so would be contrary to a clearly expressed public policy. When examining whether a contract violates public policy, this Court is mindful that public policy is more than a vague goal which may be used to circumvent the plain meaning of the contract. As this Court has stated:
>
>> Public policy is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interest. As the term "public policy" is vague, there must be found definite indications in the law of the sovereignty to justify the invalidation of a contract as contrary to that policy[.] ... Only dominant public policy would justify such action. In the absence of a plain indication of that policy through long governmental practice or statutory enactments, or of violations of obvious ethical or moral standards, the Court should not assume to declare contracts ... contrary to public policy. The courts must be content to await legislative action.
>
> This Court has further elaborated that:

It is only when a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it, that a court may constitute itself the voice of the community in so declaring [that the contract is against public policy].

*Eichelman*, 711 A.2d at 1008 (internal citations omitted).

In *Eichelman*, we also addressed the general policy underlying underinsured motorist coverage. We stated:

> [U]nderinsured motorist coverage serves the purpose of protecting innocent victims from underinsured motorists who cannot adequately compensate the victims for their injuries. That purpose, however, does not rise to the level of public policy overriding every other consideration of contract construction. As this Court has stated, "there is a correlation between premiums paid by the insured and the coverage the claimant should reasonably expect to receive." *Hall v. Amica Mut. Ins. Co.*, 538 Pa. 337, 349, 648 A.2d 755, 761 (2004) [ (1994) ].

*Id.* at 1010.

Moreover, in his Concurring and Dissenting Opinion in *Colbert*, then-Justice, now-Mr. Chief Justice Castille noted:

> The overriding concern powering the decisions in *Burstein, Eichelman,* and the earlier cases is to ensure that both insurer and insured receive the benefit of what is statutorily required and contractually agreed-upon (consistently with statutory requirements) and nothing more. As this Court recognized in *Eichelman*, an insured should not be permitted to demand coverage for a risk for which coverage was not elected or premiums paid.

*Colbert,* 813 A.2d at 759 (Castille, J., concurring and dissenting).

*Williams v. GEICO Government Employees Ins. Co.,* 32 A.3d 1195, 1200 (2011).

In *Williams,* the Pennsylvania Supreme Court held that the regular-use exclusion in a Pennsylvania State Trooper's personal automobile insurance policy was neither void against public policy nor in conflict with pertinent provisions of the MVFRL when exercised to deny UIM coverage to the trooper after he was injured in his patrol car while acting in the line of duty. Specifically, the Court reasoned:

> Even if we were to find that the statutes reflect the public policy suggested by [the appellant], we could not conclude that it requires invalidating the regular-use exclusion. [The appellant] asks us to weigh the protection of first responders against the recognized scheme of cost containment underlying the MVFRL. We have consistently held, however, that it is not the proper function of this Court to weigh competing public policy interests; rather that task is best suited for the legislature. *Generette,* 957 A.2d at 1192 (quoting [*Pennsylvania Nat. Mut. Cas. Co. v.*] *Black* [591 Pa. 221], 916 A.2d [569] at 580 [ (2007) ] ).
>
> . . .
>
> [In *Burstein, supra* ], [o]ur discussion of Mrs. Burstein's practical options for achieving UIM benefits on her employer-owned vehicle was specific to the facts of her case. *Burstein* was decided on public policy grounds, and the key decisional language appears earlier in the opinion, wherein we stated:
>
> > Here, voiding the exclusion would frustrate the public policy concern for the increasing costs of automobile insurance, as the insurer would be compelled to underwrite unknown risks that it has not been compensated to insure. Most significantly, if this

> > Court were to void the exclusion, insureds would be empowered to regularly drive an infinite number of non-owned vehicles, and receive gratis UIM coverage on all of those vehicles if they merely purchase UIM coverage on one owned vehicle. The same would be true even if the insureds never disclose any of the regularly used, non-owned vehicles to the insurers, as is the case here. Consequently, insurers would be forced to increase the cost of insurance, which is precisely what the public policy behind the MVFRL strives to prevent. Such result is untenable.
>
> *Id.* at 208.
>
> The crucial factors underlying *Burstein* and the instant case are identical—an employee injured while driving his employer-owned vehicle attempted to recover UIM benefits from his private insurer without compensating the insurer for that unknown risk.[ ] In that regard, we find that Appellant's position conflicts with the overall policies of the MVFRL, which include cost containment and the correlation between the scope of coverage and the reasonable premiums collected. *Hall,* 648 A.2d at 761. Therefore, we reaffirm *Burstein* and hold that the regular-use exclusion is not void as against public policy.

*Williams v. GEICO Government Employees Ins. Co.* —— Pa. ——, 32 A.3d 1195, 1203–4, 1206 (2011).

The same cost-containment principles apply to defeat Appellant's claim that the regular-use exclusion at issue violates public policy, as Appellant simply cannot distinguish the pertinent facts of his case from those of *Burstein* and *Williams.* Like the plaintiffs in those cases, Appellant asks that we compel his insurer to underwrite unknown risks for which he has paid no premium. Our jurisprudence has rejected this position as untenable.

Accordingly, we find Appellant's public policy challenge devoid of merit.

██ *Williams* likewise governs Appellant's related claim, which states that application of the regular-use exclusion against him violates Section 1731[1] of the MVFRL as he never signed a rejection of

1. § 1731. Availability, scope and amount of coverage

(a) **Mandatory offering.**—No motor vehicle liability insurance policy shall be delivered or issued for delivery in this Commonwealth, with respect to any motor vehicle registered or principally garaged in this Commonwealth, unless uninsured motorist and underinsured motorist coverages are offered therein or supplemental thereto in amounts as provided in section 1734 (relating to request for lower limits of coverage). Purchase of uninsured motorist and underinsured motorist coverages is optional.

(b) **Uninsured motorist coverage.**—Uninsured motorist coverage shall provide protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators of uninsured motor vehicles. The named insured shall be informed that he may reject uninsured motorist coverage by signing the following written rejection form:

REJECTION OF UNINSURED MOTORIST PROTECTION

By signing this waiver I am rejecting uninsured motorist coverage under this policy, for myself and all relatives residing in my household. Uninsured coverage protects me and relatives living in my household for losses and damages suffered if injury is caused by the negligence of a driver who does not have any insurance to pay for losses and damages. I knowingly and voluntarily reject this coverage.

..........
Signature of First Named Insured
..........
Date

(b.1) **Limitation of rejection.**—Uninsured motorist protection may be rejected for the driver and passengers for rental or lease vehicles which are not otherwise common carriers by motor vehicle, but such coverage may only be rejected if the rental or lease agreement is signed by the person renting or leasing the vehicle and contains the following rejection language:

REJECTION OF UNINSURED MOTORIST PROTECTION

I am rejecting uninsured motorist coverage under this rental or lease agreement, and any policy of insurance or self-insurance issued under this agreement, for myself and all other passengers of this vehicle. Uninsured coverage protects me and other passengers in this vehicle for losses and damages suffered if injury is caused by the negligence of a driver who does not have any insurance to pay for losses and damages.

(b.2) **Rejection language change.**—The rejection language of subsection (b.1) may only be changed grammatically to reflect a difference in tense in the rental agreement or lease agreement.

(b.3) **Vehicle rental services.**—The requirements of subsection (b.1) may be met in connection with an expedited vehicle rental service, which service by agreement of the renter does not require the renter's signature for each rental, if a master enrollment or rental agreement contains the rejection language of subsection (b.1) and such agreement is signed by the renter.

(c) **Underinsured motorist coverage.**—Underinsured motorist coverage shall provide protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators of underinsured motor vehicles. The named insured shall be informed that he may reject underinsured motorist coverage by signing the following written rejection form:

REJECTION OF UNDERINSURED MOTORIST PROTECTION

By signing this waiver I am rejecting underinsured motorist coverage under this policy, for myself and all relatives residing in my household. Underinsured coverage protects me and relatives living in my household for losses and damages suffered if injury is caused by the negligence of a driver who does not have enough insurance to pay for all losses and damages. I knowingly and voluntarily reject this coverage.

..........
Signature of First Named Insured
..........
Date

UIM coverage as required by Section 1731(c). Specifically, the Court explained:

> The regular-use exclusion as applied here is neither an implicit waiver of coverage nor an improper limitation on the statutorily mandated coverage. Rather, it functions as a reasonable preclusion of coverage of the unknown risks associated with operating a regularly used, non-owned vehicle. Indeed, an alternative reasoning would stifle the policies underlying the MVFRL and UIM coverage because the cost for UIM coverage would necessarily increase, and employers would have an incentive to underinsure their motor vehicles with the knowledge that injured employees could collect UIM benefits under their personal policies. We find both of these outcomes repugnant to the policy underlying the MVFRL.

*Williams* at 1208. Appellant's claim to the contrary, therefore, must fail.

▮▮▮▮ In his second question presented, Appellant contends that the "regular-use" exclusion at issue is ambiguous when read against another provision of the Erie policy, appearing in the "Autos We Insure" section of the policy detailing comprehensive and collision coverage, that defines "regular use" as driving a non-owned vehicle for 45 consecutive days. We disagree.

"Insurance policies are contracts, and the rules of contract interpretation provide that the mutual intention of the parties at the time they formed the contract governs its interpretation. Such intent is to be inferred from the written provisions of the contract." *Penn–America Ins. Co. v. Peccadillos, Inc.*, 27 A.3d 259, 264 (Pa.Super.2011) (quoting *American and Foreign Ins. Co. v. Jerry's Sport Center, Inc.*, 606 Pa. 584, 2 A.3d 526, 540 (2010)).

"When the words of an agreement are clear and unambiguous, the intent of the parties is to be ascertained from the language used in the agreement, ... which will be given its commonly accepted and plain meaning [.]" *LJL Transp., Inc. v. Pilot Air Freight Corp.*, 599 Pa. 546, 962 A.2d 639, 647 (2009) (citations omitted). "When, however, an ambiguity exists, parol evidence is admissible to explain or clarify or resolve the ambiguity, irrespective of whether the ambiguity is patent, created by the language of the instrument, or latent, created by extrinsic or collateral circumstances." *Insurance Adjustment Bureau, Inc. v. Allstate Ins. Co.*, 588 Pa. 470, 905 A.2d 462, 468 (2006).

(c.1) **Form of waiver.**—Insurers shall print the rejection forms required by subsections (b) and (c) on separate sheets in prominent type and location. The forms must be signed by the first named insured and dated to be valid. The signatures on the forms may be witnessed by an insurance agent or broker. Any rejection form that does not specifically comply with this section is void. If the insurer fails to produce a valid rejection form, uninsured or underinsured coverage, or both, as the case may be, under that policy shall be equal to the bodily injury liability limits. On policies in which either uninsured or underinsured coverage has been rejected, the policy renewals must contain notice in prominent type that the policy does not provide protection against damages caused by uninsured or underinsured motorists. Any person who executes a waiver under subsection (b) or (c) shall be precluded from claiming liability of any person based upon inadequate information. (d) **Limitation on recovery.**—
(1) A person who recovers damages under uninsured motorist coverage or coverages cannot recover damages under underinsured motorist coverage or coverages for the same accident.
(2) A person precluded from maintaining an action for noneconomic damages under section 1705 (relating to election of tort options) may not recover from uninsured motorist coverage or underinsured motorist coverage for noneconomic damages.
75 Pa.C.S.A. § 1731.

"A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." *Id.* at 468–469. Additionally, "[t]he provisions of an insurance contract are ambiguous if its terms are subject to more than one reasonable interpretation when applied to a particular set of facts." *Kropa v. Gateway Ford,* 974 A.2d 502, 508 (Pa.Super.2009) (internal quotation omitted). "When a provision in a policy is ambiguous, . . . the policy is to be construed in favor of the insured to further the contract's prime purpose of indemnification and against the insurer, as the insurer drafts the policy, and controls coverage." *Erie Ins. Exchange v. Conley,* 29 A.3d 389, 392 (Pa.Super.2011) (quoting *Government Employees Ins. Co. v. Ayers,* 955 A.2d 1025, 1028–29 (Pa.Super.2008)). *Miller v. Poole,* 45 A.3d 1143, 1146–47 (Pa.Super.2012).

Guided by the foregoing principles of contract interpretation, we discern no ambiguity with the "regular-use" exclusion contained in the Notice, *see supra,* Appellant received with respect to UM/UIM coverage for bodily injury sustained while driving an non-owned, regularly used vehicle. Indeed, not only does the "Autos We Insure" section, in general, pertain to a subject entirely unrelated to UM/UIM coverage for bodily injury, the specific provision upon which Appellant's ambiguity argument relies is limited in scope to certain types of rental vehicles not relevant to Appellant's line of work:

3. For Comprehensive and Collision coverages, if purchased on owned private passenger autos or trailers, we insure:

   a. Non–Owned Autos while you or a relative are operating or have possession or custody of a private passenger auto, moving van, or trailer (including a temporary substitute) not furnished or available for the regular use of you or a relative.

   A private passenger auto, moving van, or trailer rented to you for a period of more than forty-five (45) consecutive days shall be considered as furnished or available for the regular use of you or a relative.

Erie's Pioneer Family Auto Policy, p. 5. (emphasis denoting defined terms in policy deleted).

This provision cannot, therefore, be reasonably interpreted as applying to the particular facts of Appellant's case. Appellant sought UIM coverage for personal injuries sustained while driving a non-owned bus in the scope of his full-time employment. As such, the provisions contained in the regular-use exclusion Notice, supra, applied exclusively. "Regular use" in the Notice goes undefined in both the Notice and policy, and so, under our jurisprudence on contract interpretation, "we must construe the words in accordance with the natural, plain, and ordinary meaning." *Cordero v. Potomac Ins. Co. of Illinois,* 794 A.2d 897, 900 (Pa.Super.2002). We find no error with the trial court's conclusion in this regard that in the course of his full time employment, Appellant regularly used the vehicle in question such that the exclusion of coverage applied.

■■■ Finally, in his third enumerated question presented, Appellant raises the issue that the court erred when it concluded that Appellant had in fact received a legally sufficient notice and explanation of the regular-use exclusion. As noted above, the "Regularly–Used, Non–Owned Vehicle" exclusion in question was not a part of Appellant's original policy issued by Erie, but was instead an amendment to that policy received by Appellant through the mail at a later date. Before the court below, Appellant challenged the legal sufficiency of the notice and of the evidence

offered to support that a reasonable person would have understood the ramifications of the new exclusion.

The record demonstrates that the Notice was sent to Appellant at his residence and contained the precise language reproduced, *supra*. The language explained that new limitations to Erie's duty to pay would apply where the policy holder was injured while driving a non-owned, regularly used vehicle. The policy holder was further advised that if he or she failed to understand any portion of the notice, he or she should use the supplied contact information to inquire further. Under the totality of circumstances established at trial, we find no error with the trial court's conclusion that Appellant was given adequate notice and explanation of the coverage ramifications attendant to the Notice.

For the foregoing reasons, we affirm the judgment entered below.

Judgment affirmed.