J-E02005-14

2015 PA Super 110

| | |
|---|---|
| THERESA M. WOLFE, ADMINISTRATRIX OF THE ESTATE OF KEVIN T. WOLFE, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| ROBERT ROSS, | |
| Appellee | |
| v. | |
| STATE FARM FIRE AND CASUALTY COMPANY, | |
| Appellee | No. 1048 WDA 2012 |

Appeal from the Order Entered June 21, 2012
In the Court of Common Pleas of Butler County
Civil Division at No(s): 10-30444

BEFORE: FORD ELLIOTT, P.J.E., BENDER, P.J.E., BOWES, SHOGAN, ALLEN, OTT, WECHT, STABILE, and JENKINS, JJ.

OPINION BY BOWES, J.:[*]                    **FILED MAY 07, 2015**

Theresa M. Wolfe, Administratrix of the Estate of Kevin T. Wolfe, ("Administratrix"), appeals from the trial court's grant of summary judgment in favor of State Farm Fire and Casualty Company ("State Farm") and its corresponding denial of her motion for summary judgment. The issue before us is whether the motor vehicle exclusion in Robert Ross's homeowner's policy with State Farm operates to preclude recovery on the facts herein.

_____

[*] This matter was reassigned to this author on January 9, 2015.

The trial court concluded that it did, based on this Court's decision in ***Wilcha v. Nationwide Mutual Fire Insurance Company***, 887 A.2d 1254 (Pa.Super. 2005). Administratrix alleges that the exclusion is ambiguous and inapplicable on the facts herein, and that ***Wilcha*** should be limited to negligent entrustment or supervision cases. She urges us to adopt and apply the independent concurrent cause rule announced in ***State Farm Mutual Automobile Insurance Company v. Partridge***, 514 P.2d 123 (Cal. 1973), as the law of Pennsylvania. After careful review, we affirm.

Administratrix commenced this civil action for wrongful death and survival against Robert Ross. She alleged the following. In late June 2002, Mr. Ross was the host of a graduation party at his residence where alcoholic beverages were furnished or made available to the guests, including her decedent, nineteen-year-old Kevin. Kevin became impaired "in his judgment, perception, coordination and responses to the point where he was unable to operate any sort of vehicle safely." Complaint, ¶7. "As a direct and proximate result of the impairment caused by the alcohol," Kevin left the party on a dirt bike owned by Mr. Ross's son Justin, "lost control of the vehicle, struck a fixed object and suffered fatal injuries in the collision." Complaint, ¶8. All allegations against Mr. Ross sounded in negligence and arose from the furnishing of alcohol to the minor.

State Farm, Mr. Ross's homeowner's carrier, refused to defend the claim and denied coverage based on the policy's exclusion for injuries arising

out of the maintenance and use of a motor vehicle owned by an insured.[1] Mr. Ross filed a *pro se* answer to the complaint in which he denied that he furnished or provided alcoholic beverages to Kevin. In new matter, he averred that, to the extent Kevin consumed alcoholic beverages, he was contributorily negligent, and his own negligence was the proximate cause of his death.

Prior to trial, the parties agreed to enter a consent judgment against Mr. Ross for $200,000. By terms of the agreement, Mr. Ross assigned to Administratrix all of his rights under his homeowner's policy with State Farm, including the right to sue the insurer for breach of contract and bad faith. In addition, Mr. Ross agreed to cooperate with Administratrix and Administratrix agreed to forego execution against any of Mr. Ross's assets and to accept any verdict or settlement from any proceeding against State Farm in full satisfaction of the judgment. The consent judgment was entered on March 8, 2010.

On December 3, 2010, Administratrix proceeded to attempt to collect the judgment by garnishing the proceeds of Mr. Ross's State Farm homeowner's policy, which had liability limits of $100,000. State Farm and

_____

[1] We note that the exclusion herein was limited to injuries resulting from use of an insured-owned vehicle, as in the instant case, or a vehicle operated by or rented to an insured. It did not exclude coverage for injuries arising out of use of **all** motor vehicles.

Administratrix stipulated to certain facts. The parties agreed that, "[t]he plaintiff's decedent, while operating a motor vehicle, struck a fixed object off the insured location, and suffered fatal injuries in the collision." Joint Stipulation, ¶3. "[Administratrix] contends that coverage is afforded under the terms of the State Farm policy, because [her] decedent died as a direct and proximate result of the impairment caused by the alcoholic beverages allegedly furnished and/or made available to him at a graduation party for Ross' son, which was hosted by Ross, which was covered under the State Farm policy, the policy limits of which are $100,000.00." *Id*. at ¶12. "Ross denied that alcohol was provided to the guests, and State Farm contends that even if furnishing alcohol otherwise were covered, the fact that the decedent's death arose out of the operation of a motor vehicle triggers an exclusion which precludes coverage." *Id*. at ¶13. Finally, the parties stipulated that "this case is now ripe for a decision as to whether there is coverage for Ross under the State Farm policy for the claims made in the underlying lawsuit[.]"[2] *Id*. at ¶16.

_____

[2] Originally, State Farm retained the right to litigate whether the insured furnished alcohol, and, if so, whether it was a legal cause of the accident. In addition, the insurer reserved the right to challenge whether the agreement between Administratrix and Mr. Ross was fair and reasonable. State Farm subsequently waived those rights and stipulated that if the court determined that the policy covered the claim, judgment could be entered against State Farm for the policy limits of $100,000 without further proceedings. *See* State Farm's Motion for Summary Judgment, at n.1.

Both parties filed motions for summary judgment. The trial court entered summary judgment in favor of State Farm, and denied same as to Administratrix. Administratrix appealed and filed a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and the trial court issued its Pa.R.A.P. 1925(a) opinion.

Administratrix originally presented two issues:

A. Whether the trial court erred in failing to find that the motor vehicle exclusion in a homeowner's insurance policy was ambiguous in that it did not state whether the injury must be proximately caused by use of the motor vehicle or simply causally connected with use of the motor vehicle.

B. Whether the trial court erred in failing to find that the motor vehicle exclusion in a homeowner's insurance policy was inapplicable to claims where the motor vehicle was operated by the victim and where the only claim of negligence against the insured was that he had negligently furnished alcoholic beverages to the underage operator of the vehicle.

Appellant's original brief, at 4. In her supplemental brief, Administratrix focuses on distinguishing **Wilcha**, which involved claims for negligent entrustment and supervision, from the negligent furnishing of alcohol to a minor claim herein. She also urges us to apply the independent concurrent causation rule to find coverage on the instant facts. Appellant's supplemental brief at 3.

In reviewing the grant of summary judgment, we "may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion." **Murphy v. Duquesne University**, 777 A.2d 418, 429 (Pa. 2001) (citations omitted). "The interpretation of an

insurance policy is a question of law that we will review *de novo*." ***Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.***, 908 A.2d 888, 897 (Pa. 2006). The following principles inform our review. "Our purpose in interpreting insurance contracts is to ascertain the intent of the parties as manifested by the terms used in the written insurance policy." ***Babcock & Wilcox Co. v. Am. Nuclear Insurers & Mut. Atomic Energy Liab. Underwriters***, 76 A.3d 1 (Pa.Super. 2013). Where the contract language is clear and unambiguous, we must give effect to that language unless it violates a clearly expressed public policy. ***Adamitis v. Erie Ins. Exch.***, 54 A.3d 371 (Pa.Super. 2012). Alternatively, when a policy provision is ambiguous, it is to be construed in favor of the insured and against the insurer. ***Penn-America Ins. Co. v. Peccadillos, Inc.***, 27 A.3d 259, 265 (Pa.Super. 2011) (*en banc*). A policy provision is ambiguous only when it is "reasonably susceptible of different constructions and capable of being understood in more than one sense" when applied to a particular set of facts. ***Allstate Fire and Casualty Insurance Co. v. Hymes***, 29 A.3d 1169, 1172 (Pa.Super. 2011).

Herein, State Farm based its defense on a policy exclusion. Thus, the burden was on the insurer to establish its application. ***Donegal Mut. Ins. Co. v. Baumhammers***, 938 A.2d 286, 290 (Pa. 2007). The homeowner's policy in question provides that:

COVERAGE L- LIABILITY

If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage to which this coverage applies, caused by an **occurrence**, we will:

    1. pay up to our limit of liability for the damages for which the insured is legally liable; and

Homeowner's policy, at 15 (emphasis in original). An "occurrence" is defined as:

7. "Occurrence," when used in Section II of this policy, [Exclusions] means an accident, including exposure to conditions, which results in:

    a. bodily injury; or

    b. property damage;

during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one occurrence."

Homeowner's policy, at 2.

The exclusion at issue provides:

Coverage L [liability] and Coverage M [medical payments] do not apply to

    . . . .

    e. **bodily injury** or **property damage** arising out of the ownership, maintenance, use, loading or unloading of:

    . . . .

    (2) a motor vehicle owned or operated by or rented or loaned to any **insured**, or

Homeowner's policy, at 16 (emphasis in original). An ATV "owned by an **insured** and designed or used for recreational or utility purposes off public

roads," is a "motor vehicle" for purposes of liability coverage under the policy "while off an **insured location**." Homeowner's policy, at 2 (emphasis in original).[3]

The trial court held that the policy provision was not ambiguous on the facts herein and upheld the plain meaning. Administratrix assigns this as error and directs our attention to ***Eichelberger v. Warner***, 434 A.2d 747 (Pa.Super. 1981), where identical language was held to be ambiguous because it did not define whether it excluded coverage for injuries proximately caused by the motor vehicle or causally connected with the motor vehicle. Since that finding of ambiguity rested upon very different facts, they are pertinent to our analysis.

In ***Eichelberger***, the decedent was the driver of a motor vehicle that ceased operating on a highway, presumably due to a lack of gasoline. Decedent and her passenger walked to a gasoline station and, upon their return with fuel, two men stopped to assist the women. All four persons were gathered near the rear of the vehicle, the decedent positioned partially on the highway. Another vehicle approached and was about to pass the decedent's vehicle at the precise moment when the decedent inadvertently

_____

[3] If the collision had occurred on the insured premises, the ATV would not have been a motor vehicle within the policy definition, and the exclusion would not have applied. Additionally, the exclusion would not have been triggered if Administratrix's decedent had been operating an ATV or other motor vehicle that was not owned or rented by the insured.

stepped to the left into its path. That vehicle struck decedent and, in the aftermath, the men who had stopped to render assistance were also injured. At trial, the jury found both the driver and decedent to be negligent.

At issue on appeal was whether the liability provisions of decedent's vehicle policy and/or her homeowner's policy provided coverage. Under the terms of the auto policy, the insurer agreed to pay on behalf of its insured all damages due to bodily injury or death sustained by any person "arising out of the ownership, maintenance, or use of the owned vehicle." *Eichelberger*, *supra* at 749. We construed the words "arising out of" to mean the broader "causally connected with" and not "proximately caused by," in accordance with the Supreme Court's decision in *Manufacturers Casualty Insurance Co. v. Goodville Mutual Casualty Co.*, 170 A.2d 571 (Pa. 1961). We held that "but for" causation, *i.e.*, a cause and result relationship, was enough to satisfy the vehicle policy provision. The decedent's act of unwittingly stepping into the path of an oncoming car while overseeing the refueling of her vehicle was causally connected with ownership, maintenance and use of her vehicle. *See Manufacturers Casualty*, *supra* (holding a cause and result relationship is enough to satisfy the "arising out of" provision of an automobile insurance policy). Thus, there was coverage under the decedent's automobile insurance policy.

Under the terms of the decedent's homeowner's policy, the insurance company agreed to pay all damages its insured became legally obligated to

pay as damages for bodily injury "caused by an occurrence." *Eichelberger*, *supra* at 750. An occurrence was defined as "an accident, including injurious exposure to conditions, which results, during the policy term, in bodily injury or property damage." *Id*. However, the policy contained an exclusion for liability for bodily injury "arising out of the ownership, maintenance, operation, use, loading or unloading of . . . any motor vehicle owned or operated by or rented or loaned to any insured." *Id*.

In determining the applicability of the exclusionary clause in the homeowner's policy, the issue was whether the injuries to the decedent arose from the decedent's use of her motor vehicle. We found the policy to be ambiguous because it did not state whether the injury had to be proximately caused by the motor vehicle or simply causally connected with it. We noted that "different canons of construction applied to exclusionary clauses as distinguished from coverage clauses" and relied upon the rule in *Manufacturers Casualty*, *supra*. We held that "for purposes of an exclusionary clause, when the words 'arising out of' the use of an automobile are read strictly against the insurer, then it must be concluded that this clause acts to exclude only those injuries which are proximately caused by the automobile." *Eichelberger*, *supra* at 752. When this exclusion was read strictly against the insurer, it did not apply to the decedent's conduct as the injuries were proximately caused by the decedent's movement, not by the use of her vehicle.

State Farm contends that there is no ambiguity surrounding the words "caused by" on the facts herein as the motor vehicle was both the proximate cause and the cause in fact of the injury to decedent.[4] The insurer directs our attention to **Wilcha**, **supra** and **Allstate Property and Cas. Ins. Co. v. Filachek**, 2011 WL 2111219 (E.D. Pa. 2011), where identical policy language was held to be unambiguous and enforced on similar facts. In addition, the insurer maintains that in **Wilcha** and **Filachek**, decided decades after **Eichelberger**,[5] it was the cause of the injury, not the conduct of the insured, which determined whether the exclusion applied. According to State Farm, that is why claims based on the insured's conduct, such as negligent entrustment, negligent supervision, and furnishing alcohol to a minor, do not escape the effect of the exclusion.

In **Wilcha**, parents sued the operator of a motor vehicle that collided with the dirt bike operated by their thirteen-year-old son. The driver brought claims of negligent entrustment against the parents. The parents did not dispute that the homeowner's policy excluded coverage for accidents

_____

[4] In **McCabe v. Old Republic Ins. Co.**, 228 A.2d 901, 903, (Pa. 1967), the phrase "arising out of" used in a policy exclusion was not ambiguous. **In accord Madison Constr. Co. v. Harleysville Mut. Ins. Co.**, 735 A.2d 100, 110, (Pa. 1999) (finding "arising out of" language in pollution exclusion unambiguous).

[5] State Farm contends that in **Eichelberger**, this Court erred in ignoring the policy language referring to the cause of the bodily injury, and instead focused on the act that caused liability.

involving a motor vehicle and that their son was using and/or operating a motor vehicle, as that term was defined in the homeowner's policy, when the accident occurred. The issue was whether the claims of negligent entrustment and supervision directed toward the Wilchas triggered a duty to defend on the part of their homeowner's carrier.

We relied upon **Pulleyn v. Cavalier Insurance Corporation**, 505 A.2d 1016, 1020 (Pa.Super. 1986) (*en banc*), where we held that the insurer had no duty to defend a negligent entrustment claim against an employer under a casualty policy which contained an exclusion for personal injury arising from maintenance or use of an automobile operated by an employee in the course of his employment. In **Pulleyn**, we reasoned that it was not the negligent entrustment of the vehicle that caused the plaintiff's injuries, but rather the use of the vehicle by the employee that caused the harm.[6]

This distinction was also critical in **Motorists Mutual Insurance Company v. Kulp**, 688 F. Supp. 1033 (E.D. Pa. 1988), a decision the **Wilcha** Court found to be persuasive. In that case, a minor sustained injury

_____

[6] In **Pulleyn v. Cavalier Insurance Corp.**, 505 A.2d 1016, 1019-21 (Pa.Super. 1986) (*en banc*), this Court surveyed the evolving case law regarding the applicability of vehicle use exclusions to negligent entrustment claims. We acknowledged that some state courts hold that such exclusions do not bar coverage when an insured is sued for negligent entrustment. However, Pennsylvania courts have rejected that approach, reasoning that "although the act of negligently entrusting a motor vehicle is an essential (if not the primary) element of the tort [of negligent entrustment], liability giving rise to the tort is not actually triggered until the motor vehicle is used in a negligent manner resulting in injury." **Id**. at 1020.

while riding a mini-bike furnished by his aunt and uncle on adjacent property. His parents asserted claims of negligent supervision and entrustment against the aunt and uncle, and they in turn submitted the claims to their homeowner's carrier. The homeowner's policy contained a motor vehicle exclusion that was virtually identical to the one at issue herein. The insurer filed a declaratory judgment action to determine whether the policy provided coverage for the claims. The district court, citing *Pulleyn*, *supra*, held that the motor vehicle exclusion applied and precluded coverage as it was the use of the bike that triggered the insureds' alleged liability, not their negligent supervision or entrustment. In *Wilcha*, we called this reasoning "sound" and "consistent with more recent Pennsylvania jurisprudence." *Wilcha*, *supra* at 1264.

This Court ultimately concluded in *Wilcha* that the homeowner's insurer had no duty to defend the Wilchas on claims for negligent supervision and negligent entrustment. We found no ambiguity in the exclusionary language. Since the minor's injuries arose from use of the dirt bike, the motor vehicle exclusion was applicable.

Administratrix contends that negligent entrustment and supervision claims should be treated differently than the alcohol-related claim herein. She points to *Wilcha*'s discussion of the negligent entrustment tort in *Erie Insurance Exchange v. Transamerica Insurance Company*, 507 A.2d 389 (Pa.Super. 1986), and specifically the fact that negligent operation of

the entrusted vehicle is an essential element of that tort. She argues that the decedent's operation of the motor vehicle was not essential to Mr. Ross's liability for negligently serving alcohol to a minor. We find the distinction to be of no consequence where the policy language excluded coverage for **injuries** caused by a motor vehicle, not **conduct** arising out of use or maintenance of a motor vehicle.

In **Filachek**, **supra**, a federal district court applied Pennsylvania law in a declaratory judgment action to determine whether a homeowner's insurer had a duty to defend in a case involving both alcohol-related claims and claims for negligent supervision that were not limited to the use of a motor vehicle. Filachek was a passenger in a vehicle owned and operated by Maher when the vehicle struck and killed Kap. Prior to getting into the vehicle that night, Filachek and Maher spent the evening drinking, and Maher was legally intoxicated. Kap's personal representative commenced an action for wrongful death and survival against Maher, Filachek, and a bar that they had frequented. Liability against Filachek was premised on claims that he provided Maher with alcohol and encouraged Maher to drink to excess and failed to supervise Maher's driving. Allstate, Filachek's homeowner's carrier, retained counsel on his behalf, but also filed a declaratory judgment action seeking a declaration that it was not obligated to defend Filachek because the policy, under two clauses, excluded coverage for injuries arising from the use, or supervision of the use, of a motor

vehicle. The first provision excluded coverage for "bodily injury or property damage arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any motor vehicle or trailer." *Filachek*, *supra* at *2. It also contained a vehicle supervision exclusion, which excluded coverage "for bodily injury arising out of an insured's negligent supervision of another or statutorily imposed liability arising from the ownership, maintenance, use . . . of any aircraft, vehicle or trailer not covered under that policy." *Id*.

Filachek argued, as Administratrix argues herein, that the terms of the policy were ambiguous. Kap's representative asserted, as Administratrix asserts herein, that the exclusions were inapplicable because Filachek's purported negligence was unrelated to the vehicle and constituted a separate, non-automobile-related cause of injury. The district court rejected both arguments, finding the liability to be "undeniably intertwined with Maher's use of the vehicle that actually gave rise to the injury." *Id*. at *4. The court continued that the vehicle "was the instrumentality of the injury and the death 'arose out of the use' of a motor vehicle." *Id*. The court relied upon *Wilcha* for the proposition that "any liability-inducing conduct which occurred before such use cannot be divorced from the negligent driving that led to the fatal car accident." *Id*.; *Wilcha*, *supra* at 1263 n.3.

The *Filachek* court continued that, "the vehicle use exclusion is not directed at those liability-inducing **actions** which relate to the ownership,

- 15 -

maintenance, use, or occupancy of a motor vehicle. Instead, the exclusion bars coverage for all 'bodily injury or property damage' which arises out of 'the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any motor vehicle or trailer.'" ***Filachek***, ***supra*** at *4 (emphasis in original). The focus was on the cause of the injury, not on the conduct of the insured.

Administratrix attempts to distinguish ***Filachek*** as involving claims that a passenger "negligently plied the driver with alcohol and then negligently supervised the intoxicated driver's operation of the vehicle[.]" Appellant's supplemental brief at 8. She avers further that, as in ***Wilcha***, the vehicle was an essential element of the insured's liability. ***Id***. Adminstratrix simply ignores the express language of the exclusion that focuses on whether the motor vehicle was the cause of the injury, not whether the insured's conduct giving rise to liability arose out of use of a motor vehicle. The fact that the serving of alcohol to a minor subjected Mr. Ross to liability even without the involvement of a motor vehicle does not change the fact that the policy language excludes coverage for injuries arising out of use of a motor vehicle. It is undisputed that the decedent's use of the ATV was both the proximate cause and the cause in fact of his injury. We find no ambiguity in the exclusionary language on the facts herein.

In her second issue, Administratrix argues that the motor vehicle exclusion is inapplicable for two reasons. She contends first that the exclusion applies only where tortious use of the motor vehicle resulted in harm to someone other than the operator of the vehicle. A variation of this argument was advanced and rejected in **Wilcha**, *i.e.*, that the exclusion was limited to injuries that arose from the insured's use of a motor vehicle, and provided coverage for injury or damage arising out of another's use of insured's vehicle. We reject the argument herein as the exclusion expressly applies to bodily injury arising out of the use of any motor vehicle either owned by an insured **or** operated by an insured. We would have to disregard the clear policy language, specifically the use of the disjunctive, in order to credit Administratrix's proposed construction.

Administratrix also contends that the exclusion does not apply where, as here, her claims against Mr. Ross are premised solely on the fact that he provided alcohol to decedent. It was Mr. Ross's non-vehicle related conduct, according to Administratrix, that was the proximate cause of the accident, and the liability provision of the homeowner's policy is concerned only with the conduct of the insured, not with the conduct of the decedent. The operation of the dirt bike was "only a fortuitous circumstance under which the injury occurred." Appellant's brief at 14. State Farm counters that the furnishing of alcohol to the minor decedent was the type of liability-inducing conduct that preceded the use of the motor vehicle, which the **Wilcha** Court

held could not be separated from the negligent driving that culminated in the accident. **Wilcha**, **supra** at 1263 n.3.

In support of her position, Administratrix urges us to consider the reasoning of **Salem Group v. Oliver**, 607 A.2d 138 (N.J. 1992), affirming 590 A.2d 1194 (N.J. Super. 1990), a case virtually identical on its facts. Therein, an uncle furnished alcohol to his nephew, a minor, while he was riding the uncle's ATV. There was an accident and the nephew was injured. At issue was whether the uncle's homeowner's insurance company had a duty to defend a claim based on his furnishing of alcohol to his nephew. After recognizing that insurers are generally obligated to defend their insureds on social host claims, the court framed the question as whether the insurer can avoid that obligation simply because a separate excluded risk, the operation of an all-terrain vehicle (ATV), constituted an additional cause of the injury. It distinguished negligent entrustment or supervision cases, finding that those claims, in contrast to social host liability claims, could not be isolated from the ownership and operation of the insured automobile.

The **Salem** Court held that the insurer had a duty to defend the social host count as it provided an additional basis for liability independent of the insured's ownership or use of the ATV. It reasoned that one need not own a motor vehicle in order to serve alcohol to another who, in that case, was a minor. It viewed the service of alcohol and the ATV as concurrent causes of the accident for purposes of determining whether the insurer had a duty to

defend. The court expressly declined, however, to go as far as the California Supreme Court did in **Partridge**, **supra** at 129, and adopt a rule in the context of a homeowner's policy that an insurer was required to both defend and indemnify for "concurrent proximate causes . . . so long as one of the causes is covered by the policy." The New Jersey Supreme Court qualified in **Salem**, "[w]e hold not that the insurer may ultimately be liable under the policy, but only that it must honor its duty to defend." **Salem**, **supra** at 140 (N.J. 1992).

Preliminarily, we reject Administratrix's contention that the nature of the negligence claim pled, premised solely on social host liability, is determinative of coverage or the applicability of the exclusion. In determining whether there is a duty to indemnify, unlike the duty to defend, we are not limited to the claims pled. **State Farm Fire & Cas. Co. v. Decoster**, 67 A.3d 40, 46 (Pa.Super. 2013); **see also Mutual Benefit Ins. Co. v. Haver**, 725 A.2d 743, 745 (Pa. 1999) (dismissing notion that complaint's negligence claims were conclusive of whether an exclusion for "knowing endangerment" was implicated, and holding it was necessary to look at the factual allegations contained in the complaint). Thus, for purposes of coverage, it matters not that the only causal negligence asserted against Mr. Ross was his furnishing of alcohol to Kevin.

Furthermore, Administratrix's reliance upon **Salem** is misplaced. The **Salem** Court limited its concurrent causation approach to the duty to defend

and expressly declined to extend that theory to coverage, which is the issue before us. *See Flomerfelt v. Cardiello*, 997 A.2d 991, 1000-1001 (N.J. 2010) (noting that *Salem* majority limited its holding to an insurer's duty to defend only, not a duty to indemnify under a concurrent causation theory). Moreover, with regard to the duty to defend, *Salem* is consistent with current Pennsylvania jurisprudence. As we noted in *Penn-America Ins. Co. v. Peccadillos, Inc.*, *supra*, in ascertaining whether there is a duty to defend, it is the nature of the claim that is determinative. Thus, the obligation to defend is determined by reference to the allegations in the complaint. *Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 2 A.3d 526, 541 (Pa. 2010).[7]

_____

[7] In *Penn-America*, this Court held that allegations that a bar ejected from its premises a patron so inebriated as to render him a danger behind the wheel of a car, when liberally construed in favor of the insured, stated a claim subject to coverage under that establishment's commercial general liability policy. *Id*. We recognized that,

> The duty to defend is a distinct obligation, separate and apart from the insurer's duty to provide coverage. Moreover, the insurer agrees to defend the insured against any suit arising under the policy even if such suit is groundless, false, or fraudulent. Since the insurer agrees to relieve the insured of the burden of defending even those suits which have no basis in fact, the obligation to defend arises whenever the complaint filed by the injured party may potentially come within the coverage of the policy. *American and Foreign Ins. Co. v. Jerry's Sport Center, Inc. (Jerry's Sport Center I)*, 2008 PA Super 94, 948 A.2d 834, 845-846 (Pa. Super. 2008) (quoting *Wilcha v. Nationwide Mut. Fire Ins. Co.*, 2005 PA Super 395, 887 A.2d 1254, 1258 (Pa. Super. 2005) (emphasis added)).

*(Footnote Continued Next Page)*

In a final attempt to escape the exclusion, Administratrix urges this Court to adopt and apply the independent concurrent cause approach to indemnity espoused in *Partridge*, *supra*, and discussed in *Salem*. We decline to do so for several reasons, not the least of which is that, were we to do so, it likely would not achieve the result Administratrix seeks in the instant case.

In *Partridge*, the issue before the court was whether the insured was covered under his homeowner's policy, his automobile policy, or both, when his negligent acts, one automobile-related and the other unrelated to a motor vehicle, were concurrent causes of an accident. The insured enjoyed hunting and owned a .357 Magnum pistol. Prior to the accident, he filed the trigger mechanism of the pistol to lighten the trigger pull, creating a hair-trigger. On the day of the accident, the insured, accompanied by two of his friends, was driving in the countryside in the insured's vehicle. He and one

*(Footnote Continued)* ───────────────

*Penn-America Ins. Co. v. Peccadillos, Inc.*, 27 A.3d 259, 265 (Pa.Super. 2011) (*en banc*). The duty to defend remains until the insurer "clearly defeats every cause of action averred in the underlying complaint."

In *Penn-America*, the liquor liability exclusion, which excluded liability based on the bar having "caused or contributed to the intoxication" of the patron, did not limit liability that could be assessed for other reasons, such as ejecting inebriated patrons who then got behind the wheel of a car. *See also Donegal Mut. Ins. Co. v. Baumhammers*, 938 A.2d 286 (Pa. 2007) (under intentional act exclusion, fact that injuries were caused by intentional conduct of an insured did not absolve insurer of duty to defend other insureds whose allegedly negligent conduct enabled that conduct).

of his passengers were shooting jackrabbits from the windows of the moving vehicle and the insured was using his modified .357 Magnum for that purpose. At one point, the insured drove his vehicle off the paved road to keep a jackrabbit within the car's headlights. The vehicle hit a bump, and the pistol, which was either on the insured's lap or resting on top of the steering wheel, discharged. The bullet struck the second passenger in the left arm and penetrated her spinal cord, resulting in paralysis.

The court interpreted the automobile policy broadly to afford coverage. It relied on authority finding it was enough that the insured vehicle bore "some, albeit slight, causal connection with the shooting incident." *Id*. at 100. The homeowner's policy contained an exclusion for "bodily injury . . . arising out of the . . . use of . . . any motor vehicle[.]" The trial court found that the insured had been negligent both in modifying the gun by filing its trigger mechanism and in driving his vehicle off the paved road onto the rough terrain. It reasoned that these two negligent acts committed by the insured were independent, concurrent proximate causes of the passenger's injuries, one of which was non-vehicle related and the other related to use of a motor vehicle. Since the insured's negligent modification of the gun sufficed, in itself, to render the insured fully liable for the resulting injuries, and liability existed independently of the insured's use of his car, the court found coverage under the homeowner's policy.

While Administratrix assumes she would escape the exclusion that bars coverage herein if we adopted concurrent causation, *Partridge*'s progeny suggest otherwise. As illustrated in *Farmers Ins. Exchange v. Superior Court*, 220 Cal. App. 4th 1199 (2013), the concurrent causation approach does not *ipso facto* serve to avoid the motor vehicle exclusion in a homeowner's policy. In *Farmers*, a toddler exited her grandparents' home without her grandmother's knowledge to greet grandfather. He unknowingly drove over the child in the driveway. A vehicle negligence claim was asserted against grandfather; a negligent supervision claim was lodged against grandmother. The trial court held that the motor vehicle exclusion barred coverage under the grandparents' homeowner's policy for the death of the two-year-old child.

On appeal, the California Superior Court framed the issue as whether the two causes were dependent or independent concurrent proximate causes of the child's fatal injuries. The court surveyed California cases involving such exclusions and observed the following. In *Partridge*, *supra*, *State Farm Fire & Cas. Co. v. Kohl*, 131 Cal. App. 3d 1031 (1982), and *Ohio Casualty Ins. Co. v. Hartford Accident & Indemnity Co.*, 148 Cal. App. 3d 641 (1983), and similar cases, where "the excluded instrumentality did not play an active role in causing the injury," courts generally found that the motor vehicle or other relevant exclusion did not apply. (quoting *Ohio Casualty*, *supra* at 646); *see also*, *e.g.*, *Safeco Ins. Co. of America v.*

*Parks*, 170 Cal. App. 4th 992, 998 (2009). The court distinguished cases such as *National American Ins. Co. v. Coburn*, 209 Cal. App. 3d 914 (1989) (motor vehicle rolled over victim) and *Prince v. United Nat. Ins. Co.*, 142 Cal. App. 4th 233 (2006) (motor vehicle heated up on a hot day), where the motor vehicle played an active role in causing the injury and was the only instrumentality of injury. In such cases, the court observed that the motor vehicle or relevant exclusion applied to bar coverage. *See*, *e.g.*, *Belmonte v. Employers Ins. Co.*, 83 Cal. App. 4th 430, 434 (2000) (vehicle exclusion precluded coverage where van negligently driven by insured's niece hit and injured the victim, even though insured was allegedly negligent in allowing his niece to obtain the key); *Gurrola v. Great Southwest Ins. Co.*, 17 Cal. App. 4th 65 (1993) (vehicle exclusion precluded coverage under comprehensive general liability policy where insured's negligently driven rebuilt Bantam Coupe killed passenger in collision, even though the insured was allegedly negligent in welding the vehicle). The *Farmers* Court relied on the latter line of authority and affirmed the trial court's holding that the exclusion barred coverage on the facts before it.

There is no dispute herein that the motor vehicle played an active role in and was the instrumentality of the decedent's fatal injuries. The parties stipulated that "[t]he plaintiff's decedent, while operating a motor vehicle, struck a fixed object off the insured location, and suffered fatal injuries in

the collision." *See* Stipulation, ¶3. Thus, even if we were to adopt the independent concurrent causation approach first espoused in *Partridge*, and apply it consistently with subsequent California case law as it has been construed, the exclusion would still bar coverage on the facts herein.

We acknowledge that a number of other jurisdictions have employed an independent concurrent causation approach to coverage determinations. However, a closer reading of those cases reveals nuances in its application from state to state. For instance, as State Farm notes, some of those jurisdictions have held that a concurrent proximate cause only escapes an exclusion if it is truly separate and distinct from the excluded cause. *See Allstate Insurance Company v. Blount*, 491 F.3d 903, 911 (8th Cir. 2007) (Missouri courts determine whether there are concurrent proximate causes of an injury by determining whether each cause could have independently brought about the injury); *accord Gateway Hotel Holdings, Inc. v. Lexington Ins. Co.*, 275 S.W.3d 268, 282 (Mo. Ct. App. 2008); *see also United States Fid. & Guar. Co. v. St. Elizabeth Med. Ctr.*, 716 N.E.2d 1201, 1205 (Ohio App. 1998) (holding that "when a loss for which an insured seeks coverage results from two or more causes, at least one of which is covered under the insurance policy and at least one of which is excluded, coverage will extend to the loss provided that the cause of loss covered under the policy is independent of the excluded cause of loss," *i.e.*, "when the covered cause of loss (1) provides a basis for a cause of action in

and of itself and (2) does not require the occurrence of the excluded risk to make it actionable."). Under the aforementioned tests, the exclusion would bar coverage on the facts herein.

In conclusion, we do not find the exclusion to be ambiguous on the facts herein. Even interpreting the "injuries arising out of" language narrowly "as proximately caused by," it is undisputed that the instrumentality of Kevin Wolfe's death was the ATV. Additionally, we find the exclusion applicable on the instant facts. Finally, we decline to jettison our jurisprudence in favor of **Partridge** or any variation of its concurrent causation approach. In this Commonwealth, we generally permit insurers to contractually limit their liability and to impose conditions on their obligations so long as the limitations and conditions are not in contravention of a statute or public policy. Administratrix has not alleged that the exclusion is violative of any statute or public policy. Moreover, with regard to public policy, the rationale for excluding coverage for injuries arising out of operation or use of an **insured's** vehicle, or an **insured's** use of another vehicle in a homeowner's policy is obvious: the homeowner's carrier is seeking to avoid liability for the losses that attend the higher risks associated with motor

vehicles operated on public roads and which are traditionally covered by the insured's motor vehicle policy.[8]

For all of the foregoing reasons, we find that the motor vehicle exclusion in the instant case operates to exclude homeowner's coverage for the tragic death of Administratrix's decedent.

Order affirmed.

Ford Elliott, P.J.E., Bender, P.J.E., Shogan, Allen, Ott, Stabile, and Jenkins, JJ. join the Opinion.

Wecht, J. files a dissenting opinion.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/7/2015

---

[8] In recognizing the motivation for the exclusion, we are not suggesting that homeowner's insurance and automobile coverages are mutually exclusive. We expressly rejected that position in **Pulleyn v. Cavalier Insurance Corp.**, 505 A.2d 1016, 1019-21 (Pa.Super. 1986) (*en banc*) and **Eichelberger v. Warner**, 434 A.2d 747 (Pa.Super. 1981), in favor of examining each policy on its own terms.