Vickie L. FLEJTER, as
Co-Personal Representative of
the Estates of Gary W. and Barbara L. Kitchen,
Joanne C. Reich, as Co-Personal Representative
of the Estates of Gary W. and Barbara L.
Kitchen, John L. Makoutz and Clarence Kitchen,
Plaintiffs-Appellants,

v.

WEST BEND MUTUAL INSURANCE COMPANY,
Defendant-Respondent,

Eddie Lynn KECK, AIG National Insurance
Company, Inc., Dale P. Chapp, d/b/a Structural
Steel Erectors, American Family Mutual
Insurance Company, Allstate Property &
Casualty Insurance Company and
ABC Insurance Company,
Defendants.

Court of Appeals

*No. 2010AP441. Submitted on briefs November 2, 2010.
—Decided November 23, 2010.*

2010 WI App 174

(Also reported in 793 N.W.2d 913.)

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *D. Michael Guerin*, *Christopher L. Strohbehn*, and *Kathryn A. Keppel* of *Gimbel, Reilly, Guerin & Brown LLP*, Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Jeffrey Leavell* and *Danielle N. Lutz* of *Jeffrey Leavell, S.C.*, Racine.

Before Curley, P.J., Fine and Kessler, JJ.

¶ 1. FINE, J. Vickie L. Flejter and Joan C. Reich, as co-personal representatives of the estates of Gary W. and Barbara L. Kitchen, and John L. Makoutz and Clarence Kitchen appeal the circuit court's grant of summary judgment to West Bend Mutual Insurance Company dismissing the appellants' claims against West Bend, holding that neither its Commercial General Liability policy nor its umbrella policy provides coverage for the damages appellants seek. We affirm.

## I.

¶ 2. According to the complaint, Gary and Barbara Kitchen were killed when a van driven by Eddie Lynn Keck ran into them. Clarence Kitchen and Makoutz were the respective fathers of Gary and Barbara Kitchen. The complaint alleges that Keck, an employee of Dale P. Chapp, doing business as Structural Steel Erectors, was drunk when he ran into the Kitchens while driving a van owned by Chapp. The complaint also alleges that Keck was a chronic drunk, was driving the van for his personal use, and that Chapp and his company were negligent by, in essence, letting Keck drive the van that day: "Upon information and belief, Dale P. Chapp and/or Structural Steel were negligent and deficient in their policy-making, hiring, supervising, training and retaining of Keck. Further, they were negligent in entrusting Keck with the task of operating" the van. The only issue on this appeal is whether either the Commercial General Liability policy or the umbrella policy issued by West Bend to Chapp and his company provide coverage.

724

¶ 3. The West Bend Commercial General Liability policy issued to "Structural Steel Erectors Dale Chapp DBA" (some uppercasing omitted) has the following material provisions:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.
>
> . . .
>
> This insurance applies to "bodily injury" and "property damage" only if: **(1)** the "bodily injury" or "property damage" is caused by an "occurrence" . . .
>
> . . .
>
> "Occurrence" means an accident . . .
>
> . . .
>
> This insurance does not apply to:
>
> . . .
>
> "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any . . . "auto" . . . owned . . . by . . . any insured. . . .
>
> This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any . . . "auto" . . . that is owned . . . by . . . any insured.

(Some formatting altered.) As noted, Keck was driving Chapp's van.

¶ 4. The West Bend umbrella policy was also issued to "Structural Steel Erectors Dale Chapp DBA" (some uppercasing omitted) and has the following material provisions:

> We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of bodily injury to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted.
>
> . . .
>
> This insurance applies to "bodily injury" and "property damage" only if: **(1)** the "bodily injury" or "property damage" is caused by an "occurrence" . . .
>
> . . .
>
> "Occurrence" means an accident . . .
>
> . . .
>
> This insurance does not apply to:
>
> . . .
>
> **(1)** "Bodily injury" or "property damage" arising out of the ownership, maintenance or use of any "auto" which is not a "covered auto."

The appellants concede that the van Keck was driving when he hit and killed Gary and Barbara Kitchen was not a "covered auto" under the umbrella policy. They contend, however, that both policies provide coverage

for the damages that the appellants seek to recover. We address the policies and those contentions in turn.

## II.

¶ 5. As we have seen, the circuit court granted summary judgment to West Bend. A party is entitled to summary judgment if "there is no genuine issue as to any material fact" and that party "is entitled to a judgment as a matter of law." WIS. STAT. RULE 802.08(2). We review *de novo* a circuit court's ruling on summary judgment, and apply the governing standards "just as the trial court applied those standards." *Green Spring Farms v. Kersten,* 136 Wis. 2d 304, 315–317, 401 N.W.2d 816, 820–821 (1987). Our interpretation of policy contracts is also *de novo. See Ruenger v. Soodsma,* 2005 WI App 79, ¶ 8, 281 Wis. 2d 228, 236, 695 N.W.2d 840, 844. We construe and apply insurance contracts as their language "would be understood by a reasonable person in the position of the insured." *American Family Mut. Ins. Co. v. American Girl, Inc.,* 2004 WI 2, ¶ 23, 268 Wis. 2d 16, 32, 673 N.W.2d 65, 73. There is no coverage under a policy unless the contract, reasonably understood, encompasses the risk for which coverage is sought. *Id.,* 2004 WI 2, ¶¶ 23–24, 268 Wis. 2d at 32, 673 N.W.2d at 73. If the West Bend policies do not provide coverage for the appellants' claims, as the circuit court held, West Bend was "entitled to a judgment as a matter of law."

A. *The Commercial General Liability policy.*

¶ 6. West Bend's Commercial General Liability could not be more plain: it not only excludes " '[b]odily injury' or 'property damage' arising out of the owner-

ship, maintenance, use or entrustment to others of any ... 'auto' ... owned ... by ... any insured," but it also provides that the owned-auto exclusion "applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the 'occurrence' which caused the 'bodily injury' or 'property damage' involved the ownership, maintenance, use or entrustment to others of any ... 'auto' ... that is owned ... by ... any insured." As we have seen, " '[o]ccurrence' means an accident." The appellants do not dispute that Chapp owned the van that Keck drove when he hit Gary and Barbara Kitchen. Thus, the "occurrence" —the "accident"—that caused Gary and Barbara Kitchen's death "involved the ownership ... use or entrustment to" Keck of that van. Accordingly, the Commercial General Liability policy does not provide coverage for the damages the appellants seek from West Bend.[1]

---

[1] Appellants argue that the Commercial General Liability "policy did not exclude risks arising from the insured's failure to create, implement and enforce internal policies governing the use and operation of the insured's equipment, or the insured's failure to ensure that his equipment met the standards required by law for operation [because Keck apparently could not drive any vehicle that did not have an ignition-interlock device] and that it could be operated in a manner that would prevent harm to third parties." This is but a negligent-entrustment contention writ large and is fully congruent with the owned-auto exclusion, which "applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the 'occurrence' which caused the 'bodily injury' or 'property damage' involved the ownership, maintenance, use or entrustment to others of any ... 'auto' ... that is owned ... by ... any insured."

## B. *The umbrella policy.*

¶ 7. West Bend's umbrella policy excludes from its coverage " '[b]odily injury' or 'property damage' arising out of the ownership . . . or use of any 'auto' which is not a 'covered auto,' " and, as noted, the appellants concede that the van Keck was driving is not a "covered auto" under the policy. They contend, however, that the umbrella policy provides coverage nevertheless because the insuring agreement sets out two circumstances that trigger the umbrella policy: (1) "when the 'underlying insurance' does not provide coverage" or (2) "the limits of 'underlying insurance' have been exhausted." That contention, however, ignores the way we interpret insurance policies, which is to first look at the grant of coverage and then see what is taken away from that grant by the exclusions. *American Girl*, 2004 WI 2, ¶ 24, 268 Wis. 2d at 32–33, 673 N.W.2d at 73. So, accepting (but not deciding) that the appellants' argument that the umbrella policy's insuring agreement would provide coverage in those situations where the underlying insurance did not, the owned-non-covered-auto exclusion kicks in to remove that coverage. *See ibid.*

¶ 8. In seeking to get around the plain-language exclusions in both policies, the appellants interpose the independent-concurrent-cause doctrine, which we now examine.

## C. *Independent concurrent cause.*

> The independent concurrent cause rule operates to extend coverage " 'to a loss caused by the insured risk even though the excluded risk is a contributory

729

cause, [w]here a policy expressly insures against loss caused by one risk but excludes loss caused by another risk.' " *The "independent concurrent cause must provide the basis for a cause of action in and of itself and must not require the occurrence of the excluded risk to make it actionable."*

*Estate of Jones ex rel. Demet v. Smith*, 2009 WI App 88, ¶ 5, 320 Wis. 2d 470, 475–476, 768 N.W.2d 245, 247–248 (quoted sources omitted, brackets by *Estate of Jones*) (emphasis added). In *Estate of Jones*, a van driver for a daycare provider negligently left an infant in his van during cold weather. *Id.*, 2009 WI App 88, ¶ 2, 320 Wis. 2d at 473, 768 N.W.2d at 246. She died. *Ibid.* The daycare provider negligently did not check to see that all the children had arrived. *Ibid.* The daycare provider's Commercial General Liability insurance policy excluded liability for the use of vehicles like the van, declaring that there was no liability coverage for " '[b]odily injury' . . . arising out of the ownership, main-tenance, use or entrustment to others of any . . . 'auto' . . . owned or operated by or rented or loaned to any insured. Use includes operation and 'loading and unloading.' " *Id.*, 2009 WI App 88, ¶ 4, 320 Wis. 2d at 475, 768 N.W.2d at 247. We held that under the independent-concurrent-cause doctrine, the daycare's negligence was covered despite the "auto" exclusion because the daycare employees were under an independent duty to ensure that all the children were accounted for, and thus their negligence was an independent cause of the infant's death:

> [The van driver's] negligence, although it preceded the negligence of the staff, *did not contribute to the staff's alleged negligence*. Their duty was separate and independent of [the van driver's] actions. The staff has a duty to make sure that all the children who are

expected to be at the Day Care Center on any given day are accounted for regardless of how they arrive at the center. *Thus, the staff's alleged negligence does not require the use of an automobile to be actionable.* The staff's responsibility to ensure children who are expected to attend the center that day are actually in the center exists independent of mode of arrival. The duty exists regardless of whether a child arrives in a vehicle, on foot or by bike.

*Id.*, 2009 WI App 88, ¶ 9, 320 Wis. 2d at 478, 768 N.W.2d at 249 (emphasis added). Applying this rule here, there is no coverage even if Chapp and his company did not do things that might have prevented Keck from driving the van at all or driving it while drunk when he hit Gary and Barbara Kitchen because the damages the appellants claim *all flow from the risk excluded by both the Commercial General Liability and umbrella policies*—the driving of the van. Stated another way, without the excluded risk (Keck's driving the van) the alleged negligence of Chapp and his company would not be actionable; Chapp's negligence, if he was negligent in the ways appellants contend, requires the use of an automobile to be actionable, *see ibid.* This is not only evident from *Estate of Jones*, but also from *Bankert v. Threshermen's Mutual Insurance Company,* 110 Wis. 2d 469, 329 N.W.2d 150 (1983), *Mutual Service Casualty Insurance Company v. Koenigs,* 110 Wis. 2d 522, 329 N.W.2d 157 (1983), and *Smith v. State Farm Fire & Casualty Company,* 192 Wis. 2d 322, 531 N.W.2d 376 (Ct. App. 1995), all of which we now examine.

¶ 9. *Bankert* was a negligent-entrustment case where the parents of a fifteen-year-old boy permitted their son to drive an unlicensed motorcycle, injuring his fifteen-year-old passenger, John E. Bankert. *Id.*, 110 Wis. 2d at 471–472, 329 N.W.2d at 151. The boy drove

the motorcycle on a city street and the parents' policy excluded coverage for "the ownership, operation, maintenance or use" of the motorcycle "away from the premises or the ways immediately adjoining." *Id.*, 110 Wis. 2d at 479, 329 N.W.2d at 154. Despite the negligent-entrustment allegations, there was no coverage because "it is clear *that it is only the 'occurrence'—the accident—that is insured against* and, if the use of the automobile is away from the premises and the accident occurs there, there is no conduct that is insured." *Id.*, 110 Wis. 2d at 483, 329 N.W.2d at 156 (emphasis added). Driving "away from the premises" was the excluded risk, and the parents' negligence depended on that excluded risk in order to be actionable.

¶ 10. *Koenigs* was also a negligent-entrustment case. There, the parents of a thirteen-year-old boy let him drive. *Id.*, 110 Wis. 2d at 524, 329 N.W.2d at 158. The injured plaintiff sought coverage under the parents' homeowner's policy. *Id.*, 110 Wis. 2d at 525, 329 N.W.2d at 158. The policy excluded from coverage "liability for" " 'bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading' " of the car driven by the boy. *Id.*, 110 Wis. 2d at 525, 529, 329 N.W.2d at 158–159, 160. Following *Bankert*, *Koenigs* held there was no coverage under the policy "because the injuries were in fact dependent upon the negligent operation of a motor vehicle by [the boy], they are injuries that are the consequence (or to use the terms of this particular policy) or arise 'out of the ownership, maintenance, operation, use, loading or unloading' of a motor vehicle." *Id.*, 110 Wis. 2d at 529, 329 N.W.2d at 160. In *Koenigs*, as in *Bankert*, the parents' negligence depended on an excluded risk in order to be actionable. There was thus no coverage.

¶ 11. In *Smith*:

[James A.] Baumann and Robert Smith took the Smiths' two sons, Joshua and Jacob, snowmobiling. Baumann and Smith drank alcohol in a tavern over the course of several hours and then proceeded to ride their snowmobiles in a field near the tavern. Jacob was a passenger on his father's snowmobile, and Joshua rode on Baumann's snowmobile. Baumann did not put a helmet on Joshua, and Baumann's snowmobile did not have an operable headlight. While riding in the field, the Smith and Baumann snowmobiles collided. Joshua was killed, and Jacob sustained personal injuries.

*Id.*, 192 Wis. 2d at 327–328, 531 N.W.2d at 378. Smith sued Baumann under Baumann's homeowner's policy even though the policy's motor-vehicle exclusion encompassed snowmobiles. *Id.*, 192 Wis. 2d at 328, 531 N.W.2d at 378–379. Smith claimed that Baumann's intoxication, his letting Joshua ride without a helmet, and Bauman's alleged improper maintenance of the snowmobile were independent concurrent causes of the accident. *Id.*, 192 Wis. 2d at 331, 333–334, 531 N.W.2d at 380, 381. We held that they were not, because without the excluded occurrence, none of Baumann's negligence would have been actionable. 192 Wis. 2d at 332–333, 531 N.W.2d at 380–381.

■

¶ 12. That when one concurrent cause of damage is not covered by the policy, an insurer will be liable under the independent-concurrent-cause rule *if and only if* another concurrent cause is independently actionable was highlighted by *Siebert v. Wisconsin American Mutual Insurance Company*, 2010 WI App 94, 325 Wis. 2d 740, 787 N.W.2d 54, which held that an insured's *auto policy* covered a negligent-entrustment claim despite the jury's finding that the person to whom an insured loaned

her car exceeded the scope of the permission to use the car because "[t]he rule is concerned not with who is covered for their actions, but with whether the *risk* is one the policy insures." *Id.*, 2010 WI App 94, ¶ 10, 25 Wis. 2d at 747, 787 N.W.2d at 57 (emphasis by *Siebert*). Thus, although the insurer was not liable for the driver's negligence, "the *risk* associated with [the insured] lending her car to him" *was* covered. *Id.*, 2010 WI App 94, ¶ 11, 25 Wis. 2d at 747, 787 N.W.2d at 57 (emphasis added). Here, of course, both of West Bend's policies exclude all risks of damage caused by Chapp's van and, as we have seen, all of appellants' negligent-entrustment claims (a phrase we use to encompass all of the allegations that Chapp could have prevented Keck from driving the van or driving the van while drunk) thus depend on " 'the occurrence of the excluded risk to make [those claims] actionable.' " *See Estate of Jones*, 2009 WI App 88, ¶ 5, 320 Wis. 2d at 476, 768 N.W.2d at 248 (quoted source omitted).

¶ 13. The appellants contend, however, that *Lawver v. Boling*, 71 Wis. 2d 408, 238 N.W.2d 514 (1976), mandates coverage. We disagree.

¶ 14. In *Lawver*, the plaintiff, James H. Lawver, and the defendant, Clarence E. Boling, built a Rube-Goldberg device on Boling's farm to help Boling put boards over an opening in Boling's barn:

> Using materials supplied by Boling, the men rigged up a lift or swing chair by which Lawver could be raised from the ground to put the boards in place. The rig consisted of a wooden platform connected by cables to a length of rope. The free end of the rope was placed through a pulley in the barn, passed out through the opening which was to be covered over, and tied to the back of Boling's pickup truck. The truck was moved

slowly forward or backward so that Lawver could be raised and lowered on the chair as he fastened the boards in place.

*Id.*, 71 Wis. 2d at 411, 238 N.W.2d at 516. There were two insurance companies involved. "Cumis Insurance Society, Inc., had agreed to pay whatever amounts Boling would become liable to pay as 'damages because of bodily injury or property damage, arising out of the ownership, maintenance or use' of an automobile." *Id.*, 71 Wis. 2d at 412, 238 N.W.2d at 516. The truck was an "automobile" under the policy. *Id.*, 71 Wis. 2d at 412, 238 N.W.2d at 517. "Homestead Mutual Insurance Company had agreed to pay all amounts which Boling would 'become legally obligated to pay as damages because of bodily injury.' " *Id.*, 71 Wis. 2d at 412, 238 N.W.2d at 516–517. The Homestead policy, however, excluded " 'the ownership, maintenance, operation, use, loading or unloading of' " the truck. *Id.*, 71 Wis. 2d at 412, 238 N.W.2d at 517.

¶ 15. *Lawver* was a summary-judgment case and held that it was a fact question whether use of the truck made the injury actionable; that is, if negligent operation of the truck alone caused Lawver's injuries, the Cumis Insurance policy provided coverage, and the Homestead policy did not. If, however, both the truck's operation and the rigging were negligent, then both policies provided coverage:

> Here it has not yet been determined whether Lawver's injuries resulted from negligence, if any, in the actual operation of the truck (an excluded risk) or from negligence in the choice of materials for and manner of construction of the rigging (a covered risk), or both. We conclude Homestead should not be excused from its obligation to defend the action or pay benefits *until it has been determined that the injuries did not result,*

*even in part, from a risk for which it provided coverage* and collected a premium. That determination presents a question of fact which cannot be answered on a motion for summary judgment.

*Id.*, 71 Wis. 2d at 422–423, 238 N.W.2d at 521–522 (emphasis added). That is not the case here, because, as noted, the negligence *vel non* of Chapp in connection with him letting Keck drive the van or drive it while drunk *could not* have caused the accident *by itself.* Thus, the independent-concurrent-cause doctrine does not apply. *See Estate of Jones*, 2009 WI App 88, ¶ 5, 320 Wis. 2d at 475–476, 768 N.W.2d at 248. Accordingly, we affirm the circuit court's grant of summary judgment dismissing the appellants' claims against West Bend.

*By the Court.*—Judgment affirmed.