J. A12040/19

NON-PRECEDENTIAL DECISION — SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| GRANGE MUTUAL CASUALTY COMPANY, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| MILANO ENTERPRISES, INC. | : | |
| F/K/A PIZZA MILANO ENTERPRISES, | : | |
| INC., PIZZA MILANO, INC. | : | |
| T/D/B/A PIZZA MILANO, | : | |
| SEA ENTERPRISES, LLC | : | |
| T/D/B/A MILANO PIZZA MARKET, | : | |
| AND ASHLEY TAIT, INDIVIDUALLY | : | |
| AND AS ADMINISTRATOR OF THE | : | |
| ESTATE OF CAROL TAIT A/K/A | : | |
| CAROL LOWREY-TAIT, DECEASED, | : | |
| LEE KRENKE AND CHARLENE KRENKE | : | |
| AS CO-ADMINISTRATORS OF THE | : | |
| ESTATE OF STEVEN VINCENT KRENKE, | : | |
| DECEASED, LEE KRENKE, | : | No. 1644 WDA 2018 |
| CHARLENE KRENKE, AND | : | |
| MICHAEL KRENKE, INDIVIDUALLY | : | |

Appeal from the Order Entered October 23, 2018,
in the Court of Common Pleas of Allegheny County
Civil Division at No. No. GD-18-002962

BEFORE:  BENDER, P.J.E., DUBOW, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          FILED FEBRUARY 10, 2020

J. A12040/19

Grange Mutual Casualty Company ("appellant") appeals from the October 23, 2018 order[1] docketed by the Court of Common Pleas of Allegheny County granting in part and denying in part appellant's motion for judgment on the pleadings in its action for declaratory judgment against Milano Enterprises, Inc. f/k/a Pizza Milano Enterprises, Inc.; Pizza Milano, Inc. t/d/b/a Pizza Milano; Sea Enterprises, LLC t/d/b/a Milano Pizza Market (collectively, "Milano"); Ashley Tait ("Tait"), individually and as administrator of the estate of Carol Tait a/k/a Carol Lowrey-Tait, deceased; Lee Krenke and Charlene Krenke as co-administrators of the estate of Steven Vincent Krenke,[2] deceased; Lee Krenke; Charlene Krenke; and Michael Krenke, individually.[3] After careful review, we affirm and remand for further proceedings.

The trial court set forth the following:

> [] Tait filed a lawsuit against [Milano] at GD 17-12743. That suit stems from the death of Carol Tait, a pedestrian, who was apparently struck and killed by an automobile driven by a pizza-delivery man [sic] allegedly working for Milano. Tait's complaint asserts liability on Milano's part as a result of negligent hiring and retention in connection with the delivery man's

---

[1] We note that while the trial court's order is dated October 15, 2018, the order was not docketed until October 23, 2018. We have amended the caption accordingly.

[2] Steven Vincent Krenke, the driver of the vehicle in the accident giving rise to the underlying lawsuit, died prior to the initiation of the underlying lawsuit.

[3] Ashley Tait, individually and as administratrix of the estate of Carol Tait a/k/a Carol Lowrey-Tait and Lee Krenke and Charlene Krenke, individually and as co-administrators of the estate of Steven Vincent Krenke, and Michael Krenke have elected to not file briefs with this court and have instead joined the brief filed by Milano.

- 2 -

employment. [Appellant] contends it has no duty to defend or indemnify Milano in that lawsuit because, according to [appellant], the commercial general liability policy [] and the umbrella policy [] issued by [appellant] to Milano contain exclusions related to automobile accidents. [The trial] court granted [appellant] judgment on the pleadings with respect to the [commercial general liability policy] but denied judgment as to the [umbrella policy]. In this appeal, [appellant] asserts that the exclusion under the [umbrella policy] was clear and unambiguous such that [appellant] has no duty to defend or indemnify Milano in the Tait suit.

Trial court opinion, 12/21/18 at 2-3.

Appellant filed a complaint on March 2, 2018, seeking a declaratory judgment that it has no duty to defend or indemnify Milano in the underlying lawsuit filed by Tait. On May 30, 2018, appellant filed a motion for judgment on the pleadings, which the trial court granted in part and denied in part on October 15, 2018. Appellant filed a timely notice of appeal to this court. Subsequently, the trial court ordered appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and appellant timely complied. The trial court filed an opinion pursuant to Pa.R.A.P. 1925(a).

Appellant raises the following issue for our review:

Did the [t]rial [c]ourt err in declaring that [appellant's] Umbrella Policy provides coverage to Milano [] for Ashley Tait's motor vehicle accident civil action despite the existence of a clear and unambiguous exclusion for liability arising out of the maintenance, operation, or use of a motor vehicle?

Appellant's brief at 4.

Our standard of review for the grant or denial of judgment on the pleadings is . . . well settled.

> The standard to be applied upon review of a motion for judgment on the pleadings accepts all well-pleaded allegations of the complaint as true. The question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible. Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it.

Tucker v. Philadelphia Daily News, [] 848 A.2d 113, 131 ([Pa.] 2004) (citation and internal quotation marks omitted).

> Entry of judgment on the pleadings is permitted under Pa.R.[Civ.]P. 1034 which provides for such judgment after the pleadings are closed, but within such time as not to delay trial. A motion for judgment on the pleadings is similar to a demurrer. It may be entered when there are no disputed issues of fact and the moving party is entitled to judgment as a matter of law. In determining if there is a dispute as to facts, the court must confine its consideration to the pleadings and relevant documents. The scope of review on an appeal from the grant of judgment on the pleadings is plenary. We must determine if the action of the court below was based on clear error of law or whether there were facts disclosed by the pleadings which should properly go to the jury.

Citicorp North America, Inc. v. Thornton, 707 A.2d 536, 538 (Pa.Super. 1998) (citations omitted). Likewise,

> Our scope and standard of review in appeals of a grant or denial of a motion for judgment on the pleadings is well-settled. This Court applies the same standard as the trial court and confines its consideration to the pleadings and documents properly attached thereto. We review to determine whether the trial court's action respecting the motion for judgment on the pleadings was based on a clear error of law or whether there were facts disclosed by the pleadings which should properly go to the jury. We will affirm the grant of judgment on the pleadings only if the moving party's right to succeed is certain and the case is so free from doubt that trial would clearly be a fruitless exercise.
>
> Municipality of Mt. Lebanon v. Reliance Ins. Co., 778 A.2d 1228, 1231 (Pa.Super. 2001) (citations and quotation marks omitted).

Donaldson v. Davidson Bros., Inc., 144 A.3d 93, 100-101 (Pa.Super. 2016), appeal denied, 169 A.3d 11 (Pa. 2017).

Here, appellant relies upon a policy exclusion as the basis of its denial of coverage and its refusal to defend. (See appellant's brief at 13.)

> The question of whether a claim against an insured is potentially covered is answered by comparing the four corners of the insurance contract to the four corners of the complaint. See Donegal Mut. Ins. Co. v. Baumhammers, [] 938 A.2d 286, 290 ([Pa.] 2007) ("The language of the policy and the allegations of the complaint must be construed together to determine the insurers' obligation."). An insurer may not justifiably refuse to defend a claim against its insured unless it is clear from an examination of the allegations in the complaint and the language of the policy that the claim does not potentially come within the coverage of the policy. See [Gen. Acc. Ins. Co.

- 5 -

of Am. v.] Allen, 692 A.2d [1089,] 1094 [(Pa. 1997)] ("The obligation to defend an action brought against the insured is to be determined solely by the allegations of the complaint in the action . . . ."); Gene's Restaurant, Inc. v. Nationwide Ins. Co., [] 548 A.2d 246, 246-247 ([Pa.] 1988) ("[I]n determining the duty to defend, the complaint claiming damages must be compared to the policy . . . the language of the policy and the allegations of the complaint must be construed together to determine the insurer's obligation."); Springfield Tp. et al. v. Indemnity Ins. Co. of North America, [] 64 A.2d 761 ([Pa.] 1949) ("It is not the actual details of the injury, but the nature of the claim which determines whether the insurer is required to defend."). In making this determination, the "factual allegations of the underlying complaint are to be taken as true and liberally construed in favor of the insured." Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co., 193 F.3d 742 (3d Cir. 1999) (citing Biborosch v. Transamerica Ins. Co., [] 603 A.2d 1050, 1052 ([Pa.Super.] 1992)). Indeed, the duty to defend is not limited to meritorious actions; it even extends to actions that are "groundless, false, or fraudulent" as long as there exists the possibility that the allegations implicate coverage. [Erie Ins. Exch. v. Transamerica Ins. Co., 533 A.2d 1363, 1368 (Pa. 1987); Gedeon v. State Farm Mut. Auto. Ins. Co., 188 A.2d 320, 321 (Pa. 1963)].

Am. and Foreign Ins. Co. v. Jerry's Sport Ctr., Inc., 2 A.3d 526, 541 (Pa. 2010).

This court has further instructed that:

When an insurer relies on a policy exclusion as the basis for its denial of coverage and refusal to defend, the insurer has asserted an affirmative defense and, accordingly, bears the burden of proving such a defense. Wilcha v. Nationwide Mutual Fire Insurance Company, 887 A.2d 1254, 1258 (Pa.Super. 2005). To determine whether the insurer has met its burden of proof, we rely on well-settled

principles of contract interpretation. Id. When a provision of a policy of insurance is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer. Prudential Property and Casualty Insurance Company v. Sartno, [] 903 A.2d 1170, 1174 ([Pa.] 2006). The insurance company, being the one who selects the language in the contract, must be specific in its use. Id. at 1177. An exclusion from liability must be clear and exact and unambiguous in order to be given effect. Id. Describing the "hallmarks of ambiguity," the Supreme Court explained that:

> Contractual language is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. This is not a question to be resolved in a vacuum. Rather, contractual terms are ambiguous if they are subject to more than one reasonable interpretation when applied to a particular set of facts.

Id. (citations and quotations omitted). Thus, if we find an exclusionary clause to be ambiguous, we construe it in favor of the insured. Id. But if the language is not ambiguous, we must enforce the exclusion. Id.

Wall Rose Mut. Ins. Co. v. Manross, 939 A.2d 958, 962-963 (Pa.Super. 2007), appeal denied, 946 A.2d 688 (Pa. 2008).

We begin our discussion with the underlying lawsuit Tait filed against Milano. Therein, Tait filed a cause of action sounding in negligent hiring and retention and respondeat superior pursuant to the Wrongful Death Act and the Survival Act.[4] (See generally Brief in support of appellant's motion for

---

[4] 42 Pa.C.S.A. §§ 8301 and 8302, respectively.

judgment on the pleadings, 5/30/18, Exhibit A; R.R. at 42a-53a.) Specifically, Tait's complaint alleges that while he was in the scope and course of his employment with Milano as a pizza delivery driver, Steven Vincent Krenke ("Krenke") was operating "a vehicle" on February 14, 2016, when he struck Carol Tait as she was attempting to cross Ohio River Boulevard in Bellevue, Pennsylvania, causing her to sustain fatal injuries. (Id.; R.R. at 46a.) Tait's complaint alleges that at the time of the accident, Krenke was driving with a suspended license and was driving under the influence of a controlled substance. (Id.) The complaint further alleges the following:

> [I]t is clear that [Milano] either did not conduct a simple review of Krenke's criminal docket to discover the driving offenses or [Milano] did conduct a review, but allowed Krenke to drive for their business anyway despite his long history of criminal and driving offenses.
>
> Furthermore, it is clear that [Milano] failed to have any policy or procedure in place to ensure that their delivery drivers had current and valid drivers' licenses while working as delivery drivers for their business. At the time of this accident, Krenke did not possess a valid drivers' license and should not have been operating a vehicle at any time and especially in the scope and course of his employment with [Milano].

Id.; R.R. at 47a (numbered paragraphs omitted).[5]

---

[5] We note that Tait's complaint does not specify who owned the vehicle Krenke was driving at the time of the accident. In appellant's declaratory judgment complaint, appellant avers that "[] Tait alleges that [] Krenke caused an accident with his motor vehicle while he was acting within the course and scope of his employment as a deliver driver for [] Milano. (Appellant's amended complaint, 4/30/18 at 2 (emphasis added).)

We now turn to the umbrella policy ("UP"), which is the subject of the instant appeal. As argued by Milano, umbrella policies are designed to "provide for a higher limit for those losses typically covered by [underlying] liability insurance" and "to provide for some coverage of those less common losses not typically covered by liability insurance[.]" Treesdale, Inc. v. TIG Ins. Co., 681 F. Supp. 2d 611, 619 (W.D. Pa. 2010) (citation omitted), cited by Milano's brief at 15. Put another way, "[u]mbrella liability adds a broadening measure of coverage against many of the gaps in and between the underlying coverages of the primary policy." Treesdale, Inc., 681 F. Supp. 2d at 619, quoting Houbigant, Inc. v. Federal Ins. Co., 374 F.3d 192, 204 (3d Cir. 2004); Milano's brief at 15 n.4.

In Section I – Coverages, the UP at issue in the instant case states as much:

> SECTION I – COVERAGES
>
> COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY
>
> 1.    Insuring Agreement
>
>     a.    We will pay on behalf of the insured[6] the "ultimate net loss" in excess of the retained limit" because of "bodily injury" or

---

[6] The UP names the following entities as "insured": Pizza Milano Enterprises, Istanbul, Inc., Buse, Inc., Mineo's Pizza, Pizza Milano of Robinson, Sea Enterprises, LLC, Café Milano, Inc., Milano Pizza Market, and Pizza Milano, Inc. d/b/a Pizza Milano. (See brief in support of appellant's motion for judgment on the pleadings, 5/30/18, Exhibit D, Schedule of Names and Addresses at 4; R.R. at 165a.)

> "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damages for such "bodily injury" or "property damage" when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted. . . . However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.
>
> . . . .
>
> 2.    Exclusions
>
> This insurance does not apply to:
>
> . . . .
>
>       f.    Auto Coverages
>
>             (1)    "Bodily injury" or "property damage" arising out of the ownership, maintenance or use of any "auto" which is not a "covered auto[.]"

Brief in support of appellant's motion for judgment on the pleadings, 5/30/18, Exhibit D, Commercial Liability Umbrella Coverage Form (Policy No. CU 00 01 04 13) at 1, 3; R.R. at 172a, 174a (quotation marks in original).

The UP sets forth the following relevant definitions:

> SECTION V – DEFINITIONS
>
> . . . .
>
> 2.    "Auto" means:

a. A land motor vehicle, trailer, or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

b. Any other land vehicles that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment."

. . . .

5. "Covered auto" means only those "autos" to which "underlying insurance" applies.

. . . .

24. "Underlying insurance" means any policies of insurance listed in the Declarations under the Schedule of "underlying insurance."[7]

Brief in support of appellant's motion for judgment on the pleadings, 5/30/18, Exhibit D, Commercial Liability Umbrella Coverage Form (Policy No. CU 00 01 04 13) at 15, 18; R.R. at 186a, 189a (quotation marks in original).

As noted by both Milano and the trial court, the auto coverage exclusion in the UP differs from the auto coverage exclusion contained within the commercial general liability policy ("CGL policy"). (See Milano's brief at 11;

---

[7] The commercial general liability policy is the only policy identified on the UP's schedule of underlying insurance. (See brief in support of appellant's motion for judgment on the pleadings, 5/30/18, Exhibit D, Commercial Liability Umbrella Declarations Schedule of Underlying Insurance at 2; R.R. at 163a.)

trial court opinion, 12/21/18 at 3-4.)  The CGL policy's auto coverage exclusion is as follows:

> SECTION II — LIABILITY
>
> . . . .
>
> B.  Exclusions
>
> 1.  Applicable To Business Liability Coverage
>
> This insurance does not apply to:
>
> . . . .
>
> g.  Aircraft, Auto or Watercraft
>
> > "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured.  Use includes operation and "loading or unloading."
> >
> > This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

Brief in support of appellant's motion for judgment on the pleadings, 5/30/18, Exhibit C, Businessowners Coverage Form (Policy No. BP 00 03 01 10) at 31,

33, 35-36; R.R. at 99a, 101a, 103a-104a (emphasis added). The claims asserted in the underlying lawsuit are clearly excluded under the CGL policy.

Based on our comparison of the four corners of the UP with the four corners of Tait's underlying complaint, we find that an ambiguity exists as it relates to the UP's auto exclusion. Indeed, the UP does not specifically contain an exclusion of coverage for claims alleging negligence or other wrongdoing in the supervision, hiring, employment, training, or monitoring of others by an insured resulting in bodily injury or property damage involving the ownership, maintenance, or use of any auto which is not a "covered auto," unlike the CGL policy, which contains an explicit exclusion of such coverage. (See brief in support of appellant's motion for judgment on the pleadings, 5/30/18, Exhibit D, Commercial Liability Umbrella Coverage Form (Policy No. CU 00 01 04 13 at 1, 3; R.R. at 172a, 174a; brief in support of appellant's motion for judgment on the pleadings, 5/30/18, Exhibit C, Businessowners Coverage Form (Policy No. BP 00 03 01 10) at 31, 33, 35-36; R.R. at 99a, 101a, 103-104a).

To further establish this ambiguity, the UP also contains an exclusion for personal injury or property damage pertaining to aircraft or watercraft that reads as follows:

> j.   Aircraft or Watercraft
>
> "Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft or watercraft

owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading."

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft or watercraft that is owned or operated by or rented or loaned to any insured.

Brief in support of appellant's motion for judgment on the pleadings, 5/30/18, Exhibit D, UP Revised Coverage Provisions, Endorsement CU02 (Policy No. CUP 2008174), unnumbered page 1 of 2; R.R. at 190a (emphasis added). This clause is conspicuously absent from the UP's auto exclusion.

The record reflects that appellant is the author of both the CGL policy and the UP. As noted by Milano, if appellant intended for the auto exclusion in the UP to apply to claims alleging negligent supervision, hiring, employment, training, or monitoring of others by the insured, it could have expressly included such a clause in the UP, just as it did for the aircraft and watercraft exclusion in the UP and the exclusion relating to aircraft, auto, and watercraft in the CGL policy. (See Milano's brief at 12.)

Appellant directs us to our en banc decision in Wolfe v. Ross, 115 A.3d 880 (Pa.Super. 2015) (en banc). In Wolfe, the 19-year-old decedent attended a high school graduation party hosted by the defendant where alcohol was furnished. Id. at 882-883. The underlying complaint alleged that the decedent, "as a direct and proximate result of the impairment caused by the alcohol," left the party on a dirt bike owned by the defendant's son, lost control of the bike, struck a stationary object, and died as a result of his injuries. Id. at 883. The cause of action against the defendant sounded in negligence and arose from the furnishing of alcohol to a minor. Id. The defendant's homeowner's insurance policy contained a coverage exclusion for "bodily injury or property damage arising out of the ownership, maintenance, use, loading or unloading of a motor vehicle owned or operated by or rented or loaned to any insured." Id. at 885 (formatting altered and citations omitted). We held as follows:

> The fact that the serving of alcohol to a minor subjected [the defendant] to liability even without the involvement of a motor vehicle does not change the fact that the policy language excludes coverage for injuries arising out of use of a motor vehicle. It is undisputed that the decedent's use of the ATV was both the proximate cause and the cause in fact of his injury. We find no ambiguity in the exclusionary language on the facts herein.

Id. at 889.

In its brief, appellant contends that it would be "logically consistent" to "extend the Wolfe reasoning to umbrella policies." (Appellant's brief at 22.)

- 15 -

In support of its contention, appellant invites this court to adopt the holding of the Wisconsin Court of Appeals in Flejter v. West Bend Mut. Ins. Co., 793 N.W.2d 913 (Wis. Ct. App. 2010). (See appellant's brief at 22-24.) In Flejter, the court considered whether a general commercial liability policy and an umbrella policy containing virtually identical language to the policies at issue in the instant case[8] provided coverage for damages sought by the plaintiffs in an underlying tort case.[9] Id. at 915. The Flejter court found in

---

[8] The Flejter court reproduced the following relevant language from the general commercial liability policy:

> This insurance does not apply to bodily injury or property damage arising out of the ownership, maintenance, use or entrustment to others of any auto owned by any insured.

> This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others that by insured, if the occurrence which caused bodily injury or property damage involved the ownership, maintenance, use or entrustment to others of any auto that is owned by the insured.

Flejter, 793 N.W.2d at 915 (formatting modified, ellipses and quotation marks omitted). The court reproduced the following relevant language from the umbrella policy: "This insurance does not apply to bodily injury or property damage arising out of the ownership, maintenance or use of any auto which is not a covered auto." Id. (formatting modified, ellipses and quotation marks omitted).

[9] In the underlying case, the plaintiffs filed a cause of action sounding in negligent hiring, supervising, training, and retaining of an employee who was driving a company vehicle for personal use when he was involved in a fatal car accident. Id. at 914.

favor of the defendant insurance carrier, rejecting the plaintiffs' contention that the independent concurrent cause doctrine should apply. Id. at 920. Unlike our Wisconsin counterparts, we are unable to review the entire policy considered by the court of appeals when reaching its decision. Because the instant case rests upon whether the UP's exclusionary language was ambiguous, we find Flejter to be of limited persuasive value here.

Therefore, we find that the exclusionary language at issue in the UP is ambiguous and must be construed in favor of Milano. Manross, 939 A.2d at 963, citing Sartno, 903 A.2d at 1174. Accordingly, we hold that the trial court did not err when it denied appellant's motion for judgment on the pleadings pertaining to coverage under the UP.

Order affirmed. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/10/2020